HOWLAND *v.* CAILLE.

1. PLEADING—DECLARATION—AMENDMENT—ALLOWANCE—PROPRIETY.

Where a declaration on the common money counts was accompanied by a bill of particulars disclosing an intention to recover money due for land sold on a contract assigned to plaintiff, there was no error in allowing plaintiff leave to amend the declaration at the close of his case so as to set forth the case described in the bill, including an allegation that the contract had been assigned to plaintiff.

2. SAVING QUESTIONS FOR REVIEW — THEORY BELOW — SHIFTING GROUNDS.

Where defendant's theory below was that the declaration upon the common money counts would not authorize a recovery of money due for land sold, and that plaintiff was not entitled to recover because no assignment of the land contract to him was pleaded, and that the declaration was not amendable in these respects, a contention in this court, not presented to the court below, that plaintiff's assignor was a mere trustee, and his assignment a nullity, will not be considered.

Error to Wayne; Brooke, J. Submitted June 10, 1908. (Docket No. 48.) Decided June 27, 1908.

Assumpsit by J. Ward Howland, administrator of the estate of Arthur D. Howland, deceased, against A. Arthur Caille and another for an amount due on a land contract. There was judgment for plaintiff, and defendants bring error.   Affirmed.

:   *Jonathan Palmer, Jr.* (*Elbridge F. Bacon,* of counsel), for appellants.

*Wilkinson, Post & Oxtoby,* for appellee.

BLAIR, J.   March 18, 1898, Harry C. Hall and wife executed a warranty deed to John Ward of three lots in the city of Detroit for an expressed consideration of $2,800. March 22, 1898, Ward and Hall executed a land contract of one of the three lots, conveying the same to Hall for an expressed consideration of $2,500.   April 28, 1899, Hall assigned the land contract to William J. Gutow, who assumed its performance.   September 15, 1899, at the request of George W. Meyers, a partner of Gutow, and who had constructed a house on the lot in question and had conducted negotiations for a sale of the lot to defendants, John Ward and the defendants executed a land contract in duplicate conveying the lot to defendants for an expressed consideration of $4,500, payable " Eleven hundred dollars at the date hereof and the remaining thirty-four hundred dollars in monthly payments of fifty dollars or more in each month," etc.   This contract was recorded November 27, 1899, in the office of the register of deeds and the original contract was retired.   One thousand one hundred dollars was paid on this contract September 15, 1899, of which amount Meyers received $700.   Three further payments, amounting in all to $200, were made to Ward, leaving a balance due January 24, 1900, of $3,200. Mr. Ward having died about this time, and his estate being indebted to Mary E. Barnard,—

" This security with perhaps two or three hundred

other securities was turned over to Mr. Barnard, a good many of them the title being held in Mr. Ward."

The contract was not formally assigned to Mr. Barnard or to his sister, for whom he acted, but, according to the books of John Ward, was placed "in charge of H. F. Barnard." Mr. Barnard's books contained the following entries:

"This entry is headed A. Arthur Caille and Caty A. Caille, wife, from John Ward, M. E. B. (which refers to Mary E. Barnard), April 27, 1900, September 15, 1899, 6 per cent., 15,392 (that is the page from Mr. Ward's records).

"*Q.* '$4,500; $1,100 down, $50 or more monthly, interest semi-annually; lot 186, William Y. Hamlyn, S. J. Brown's subdivision of L. 3 and 4 of quarter section 57 of the 10,000 A. T. plat L. H. page 72. Said lot lying on the northerly side of Bethune avenue, between John R. and Brush streets. Insurance $2,500, Western Underwriters, March, 1901.' Right-hand side, 'by Smith' entries are, '1900, May 1, to principal charged, $2,750. To interest charged $20.62.'

"June 16, 1900, charged $2,600. Credited $150. September 15, 1900, charged $2,400, credited $200. September 20th, interest to September 15th, charged $2,350, credited, principal $50; interest $80.25. January 25, 1901, received payment in full, deed given by J. Ward Howland, executor, to A. A. and C. A. Caille, credited $2,350, principal; $50.53 interest. 'The charge column is balance $2,750, and the credit column balance $2,750.'

"*Q.* Are you able to state, Mrs. Gies, whether these entries include all payments made by A. Arthur Caille or anyone for him upon this contract at your office?

"*A.* Yes, sir."

January 24, 1901, J. Ward Howland, as sole surviving executor of the estate of John Ward, deceased, executed a warranty deed of the lot to defendants, reciting and acknowledging receipt of the consideration of $4,500. Afterwards and prior to the commencement of this suit, defendants conveyed the lot to others. January 25, 1901, Barnard gave defendants the following receipt:

"Received from A. Arthur Caille, duplicate contract

for lot 186 Bethune Ave. E., same having been fulfilled and canceled by deed this day of said property."

The indorsements of payments on defendants' copy of the contract agreed precisely with the indorsements on the Ward copy and left a balance due of $450 of principal, and, apart from the prima facie evidence of the receipts and recitals, the evidence is conclusive that such amount was still due when the deed was executed and that the deed was made by mistake. Defendants having refused to pay this balance, Arthur D. Howland, to whom the claim had been assigned, began suit November 19, 1903, by declaration on the common money counts, with the following bill of particulars attached:

"Balance of purchase price of premises situated in the city of Detroit, Wayne county, Michigan, described as lot one hundred eighty-six (186) of William Y. Hamlin and S. J. Brown's subdivision of lots three (3) and four (4), in quarter section fifty-seven (57) of the Ten Thousand Acre Tract, sold to defendants herein by John Ward, now deceased, his interest therein having been assigned to plaintiff------------------- $450 00

"Interest on same from March 15, 1900, to October 1, 1903------------------------------------------------ 125 57
                                                                              _____
    "Total due------------------------------------------ $575 57"

To this declaration, defendants pleaded the general issue with notice as follows:

"You Will Please to Take Notice: That the defendants will give in evidence of the general issue above pleaded and insist in their defense:

"1st. That the property mentioned in plaintiff's bill of particulars in the above entitled cause, has been paid for by the defendants, receipt in full received for such payment and a deed of said property executed and delivered to said defendants in fulfillment and cancellation of the contract formerly held for said property.

"2d. The said plaintiff, if he ever had a cause of action against said defendants, has been guilty of laches, and has lost the same, as said property was deeded to said defendants under the contract held by the defendants for the same, and said property has since been sold and deeded

away by said defendants, prior to any claim being made by said plaintiff or the commencement of this suit."

Arthur D. Howland having died prior to the trial, the suit was revived in the name of the present plaintiff. Defendants' counsel, throughout the trial, made objections to the admission of testimony, for the reasons that the declaration on the money counts did not authorize a recovery of the balance due on the land contract and that. the declaration did not allege an assignment of the contract to the plaintiff. These reasons were repeated at the close of the testimony in a motion to strike out all the evidence, and this motion having been overruled, defendants' counsel asked the court to direct a verdict for defendants, for the following reasons:

"1. Because of the variance in the proofs and the pleadings.

"2. Because the declaration does not count upon the fact that recovery is sought for money due for land sold.

"3. Because the declaration does not allege an assignment from the vendor of the lands to the plaintiff.

"4. Because the plaintiff has failed to make out a case under the declaration, which has never been amended, nor any request made for any amendment."

Counsel for plaintiff thereupon asked leave to amend, and counsel for defendants declining to state whether he was surprised or not, the court granted such leave, against defendants' objection, saying, among other things:

"At the close of the plaintiff's case, the plaintiff having rested, motion was made by the defendant for a verdict upon the ground there is a fatal variance between the pleadings and the proofs offered for the reason that the declaration does not count upon the fact that the recovery is sought for money, due for land sold, and for the further reason that the declaration does not allege an assignment from the vendor of lands to the plaintiff. It is apparent from an examination of the pleadings that while the declaration is defective, as pointed out, the defendant could not be at any time in doubt as to the real cause of action because the bill of particulars and the declaration fully states that the plaintiff brings suit as assignee of John Ward,

or the estate of John Ward, who, in his lifetime, had made the contract with the defendant, and under which contract the alleged balance is alleged to be due and payable."

The amended declaration which was filed was in proper form to authorize a recovery, if supported by the proofs, and obviated the objections referred to.   Defendants put in no testimony and the issue of fact having been submitted to the jury, they returned a verdict in favor of plaintiff.    To review the judgment entered upon the verdict, defendants prosecute this writ of error.

The assignments of error are grouped for argument in the principal brief under four heads.   The assignments under the first head " raise the question whether the allegations in the declaration were sufficient to authorize the admission of the testimony objected to." The second head relates to the assignments alleging error in overruling the two motions to direct a verdict and raises the same legal questions as the first.    The third head alleges error in permitting the amendment:

" 1. Because such amendment was permitted after plaintiff had rested his case.
" 2. Because such amendment introduced a new cause of action."

Under the fourth head it is alleged that the court erred:

" In charging the jury as follows:

" ' If you believe the plaintiff's testimony under the pleadings as they now stand, it will be your duty to bring in a verdict for the plaintiff for the full amount claimed, $450.00, with interest, which has been computed at 6 per cent., which is $628.88.   There is no possibility of any complication.'

" This charge in effect instructed the jury that under the pleadings as amended they should find a verdict for the plaintiff for the full amount claimed.    It therefore raises the questions: (1) As to whether plaintiff's proofs made out a case against the defendants.   (2) As to whether the declaration as amended was sufficient to authorize a verdict and judgment for plaintiff."

The original declaration, in connection with the bill of

particulars, so far as the defendants were concerned, served all of the purposes of a formally correct declaration in apprising them, as shown by their pleading, of the precise nature of plaintiff's claim against them and enabling them to prepare their defense. The cause of action upon which the plaintiff attempted to declare, as indicated by the bill of particulars, was the same as the cause of action set forth in the amended declaration. Under such circumstances, the court did not err in permitting the amendment. *Jones* v. *Pendleton*, 151 Mich. 442.

It is argued in support of the assignments under the fourth head that the testimony shows: That, although the contract stood in the name of John Ward, it was held by him in trust for Mary E. Barnard, William J. Gutow and George W. Meyers, as appears by the testimony hereinbefore quoted and the following testimony of the witness Thomas, who was associated with Ward in business and remained with his executor till the estate was closed, viz. :

"*Q.* To whom, Mr. Thomas, did the excess that was due on this contract over and above $2,750, and the other charges you had against Gutow and Meyers belong? * * *

"*A.* At that time it belonged to William J. Gutow and George W. Meyers. * * *

"*Q.* What amount was due upon the Caille contract at the time it was turned over to Mr. Barnard ?

"*A.* $3,200. * * *

"*Q.* Was there any writing in regard to the amount Mr. Barnard was to collect out of the payments upon the Caille contract ? * * *

"*A.* Not outside the entries in our books.

"*Q.* How much of the $3,200, the balance that was due upon this contract, was to be paid to the Barnard office ?

"*A.* $2,750."

That as no part of the amount claimed to be unpaid on this contract belonged to the estate of John Ward and the estate had no beneficial interest in the amount due on the contract or mortgage, the estate held the naked title solely for the benefit of the owners of the fund and an

assignment of the contract by the executor would be a mere nullity.

That it did not require any written assignment to transfer the debt evidenced by the contract to Mary E. Barnard, William J. Gutow and George W. Meyers, but such transfer could be made by delivery of the contract or by parol.

That the settlement evidenced by Exhibit "I" conclusively shows that Gutow and Meyers had an interest in the moneys secured by the contract, amounting to over $450.

Exhibit "I" is as follows:

"THE JOHN WARD LOAN AND REALTY OFFICE.
"61 Home Bank Building,
"Telephone M. 2282.
"J. WARD HOWLAND, Manager.
"DETROIT, MICH., Nov. 1, 1904.

"Received of Mr. J. Ward Howland the sum of six hundred ($600) dollars, which I hereby acknowledge to be in full of any and all claims of any character and description against John Ward, his heirs, legatees or assigns growing out of transactions had between the said John Ward, George W. Meyers and William J. Gutow, or either of them, it being the intention of this instrument to finally, definitely and completely adjust and settle all matters between the said parties above mentioned.

"WILLIAM J. GUTOW,
"MARY GUTOW.

"I, George W. Meyers, hereby disclaim any interest, right or title in any of the transactions referred to in the above instrument, I having heretofore transferred all interest to William J. Gutow above mentioned.

"GEORGE W. MEYERS."

It is clear that no such point as this was made before the trial judge. The record demonstrates that the trial judge was given to understand that defendants were insisting that plaintiff was not entitled to recover and that defendants were entitled to a verdict because the declaration did not permit a recovery and was not amendable. The instruction complained of was necessarily made with this position of defendants' counsel in view. The ques-

tions now raised are evidently the result of afterthought. In fairness to the circuit judge, they should have been presented for his consideration, and, not having been so presented, we must decline to consider them.

The judgment is affirmed.

MONTGOMERY, MOORE, CARPENTER, and MCALVAY, JJ., concurred.